The Full Commission has reviewed the prior Opinion and Award based upon the entire record of the proceedings and the briefs and oral arguments before the Full Commission. No additional witness testimony was received by the Full Commission. Although the Full Commission recognizes the general proposition that witness credibility may be best judged by a first-hand observer, in this case, Deputy Commissioner Haigh was not present at the hearing. Therefore, the Full Commission is in as good a position to assess the credibility of witnesses as was Deputy Commissioner Haigh. On that basis, the Full Commission finds that the appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence of record, the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
*************
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing on 16 October 1995 as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Liberty Mutual Insurance Company was the carrier on the risk at all relevant times herein.
3. The average weekly wage of the employee at the time of said injury, including overtime and all allowances, was $503.00.
4. The medical records attached to the Pre-Trial Order are received into evidence.
*************
Based upon the entire record of evidence, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer for approximately 11 years before injuring his right knee on 8 February 1994. At the time of his injury, plaintiff was working in defendant-employer's landscaping and maintenance department.
2. The maintenance department is located in a large garage where its offices are also located. The maintenance crews routinely washed dirt and grease off the garage floor with water hoses. Door jambs under the office doors prevent water from running under the doors and into the offices. On 8 February 1994, plaintiff was in a hurry to leave his office and join Tom Darden, a co-employee, in the garage. As plaintiff was walking out of the door, he reached back for a bag of lawnmower parts laying on a shelf to the right of the door. When plaintiff pivoted back toward the door, he stepped on the side of the door jamb and twisted his right knee. Plaintiff fell against the door, screaming with pain.
3. Tom Darden was in the garage and heard plaintiff's scream. Mr. Darden saw plaintiff hanging onto the office door with one hand and holding his right leg with the other hand.
4. Dr. Robert A. Appert is an orthopedic surgeon at Wilson Orthopedic Surgery and Neurology Center, P.A. Following the incident at work on 8 February 1994, he examined plaintiff and found a torn medial meniscus in his right knee.
5. Based on the medical evidence contained in the record, particularly the testimony of Dr. Appert, plaintiff could not have sustained a torn medial meniscus from walking normally in the garage as alleged by defendants. Further, even with a preexisting anterior cruciate ligament injury, plaintiff could not have sustained the torn medial meniscus without a substantial twisting of his knee.
6. Former Deputy Commissioner D. Bernard Alston heard this case on 16 October 1995. Thereafter, former Deputy Commissioner Alston resigned from the Industrial Commission without writing an Opinion and Award. The case was then assigned to Deputy Commissioner William L. Haigh.
7. In his Opinion and Award, Deputy Commissioner Haigh found plaintiff's testimony concerning the circumstances of the incident and injury to be not credible. He made this finding based on record of evidence and not from first-hand observations of witnesses at the hearing.
8. The Full Commission acknowledges the general proposition that the credibility of witnesses may be best judged by a first-hand observer of the witnesses. However, Deputy Commissioner Haigh was not a first-hand observer of plaintiff or the witnesses and therefore, was in no better position than the Full Commission to determine plaintiff's credibility.
9. In reviewing the record, the Full Commission finds plaintiff's testimony regarding the circumstance of the incident on 8 February 1994 to be credible. This finding regarding plaintiff's testimony is based on the corroborative testimony of Dr. Appert and Mr. Tom Darden, plaintiff's coworker. In his deposition, Dr. Appert testified that plaintiff's knee injury was the result of a twisting of the knee consistent with plaintiff's description of the incident. At the hearing, Mr. Darden's testimony regarding his observances of plaintiff immediately following the incident support plaintiff's testimony regarding the circumstances of his injury.
11. Clint Hasty, plaintiff's supervisor, Terry A. Moore, the company nurse, and Richard Freeburn, claims representative, all testified that plaintiff told them that he injured his knee while walking in the garage. The Full Commission does not find their testimony credible for the following reasons: (1) each of these witnesses is strongly identified with the interests of defendant-employer; (2) the investigations of Clint Hasty and Terry Moore were so precursory that neither could testify to any of the details of the incident, such as the time, place or circumstances surrounding plaintiff's knee injury;
(3) Richard Freeburn could not produce plaintiff's recorded statement after alleging that plaintiff denied having sustained a work related injury; (4) the testimony of Clint Hasty and Terry Moore is contradicted by the testimony of Tom Darden, who was present when the incident occurred, that the incident occurred at the office door as plaintiff was leaving the office.
11. On 8 February 1994, plaintiff unexpectedly and fortuitously twisted his knee, when he stepped on the side of the door jamb during the course of his employment with defendant-employer. The plaintiff's stepping on the door jamb was an interruption of his normal work routine, causing him to twist his knee and to tear his right medial meniscus.
12. On 8 February 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
13. On 2 March 1994, Dr. Appert performed an arthroscopy on plaintiff's right knee and removed eighty to ninety percent (80%-90%) of the medial meniscus from his right knee. Following the surgery, Dr. Appert released plaintiff to return to work on 8 March 1994 with the following restrictions: no lifting of more than ten pounds; no repetitive squatting, and; no repetitive stair climbing.
14. With these restrictions, plaintiff returned to work on 4 April 1994. Just prior to his return to work, plaintiff began to experience a deceleration problem in his right knee. Because this problem did not resolve, plaintiff was forced to leave work and returned to Dr. Appert on or about 30 May 1994.
15. Prior to twisting his knee on 8 February 1994, plaintiff had an anterior cruciate ligament injury. Because of this prior injury, plaintiff was dependent upon the menisci in his right knee to provide overall support for the knee joint. After the medial meniscectomy performed by Dr. Appert, plaintiff's knee was unstable and he developed the deceleration problem. To stabilize the knee, Dr. Appert performed an anterior cruciate ligament reconstruction on 7 June 1994.
16. The deceleration problem in plaintiff's right knee, which lead to the surgery performed on 7 June 1994, was caused or materially aggravated by his injury by accident of 8 February 1994.
17. Dr. Appert released plaintiff to return to work with restrictions on 27 July 1994. Following a period during which plaintiff's restrictions were clarified, he returned to work for defendant-employer in a light duty position on 14 August 1994. Plaintiff continued working through 9 October 1994, when he developed a catching in his right knee.
18. On 10 October 1994, plaintiff was examined by Dr. Appert who diagnosed a lateral meniscus tear. Dr. Appert removed plaintiff from work and opined that this latest injury was related to his earlier knee injuries. On 26 October 1994, Dr. Appert performed a third arthroscopic surgery on plaintiff's right knee to repair the lateral meniscus tear.
19. The lateral meniscus tear in plaintiff's right knee, which resulted in the surgical procedure performed on 26 October 1994, was the natural and probable result of and was caused by his 8 February 1994 injury by accident.
20. Plaintiff returned to work on 19 November 1994. Thereafter, Dr. Appert rated plaintiff as having a 10% permanent partial disability to his right knee as the result of his 8 February 1994 injury by accident and related injuries and surgical procedures.
21. As the result of his 8 February 1994 injury by accident and related injuries and surgical procedures, plaintiff was unable to earn wages in his former position with defendant employer or in any other employment for the following periods: from 2 March 1994 to 4 April 1994; from 7 June 1994 to 14 August 1994; and from of 9 October 1994 to 19 November 1994.
22. Plaintiff's average weekly wage on 8 February 1994 was $503.00, yielding a compensation rate of $335.33.
*************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage on 8 February 1994 was $503.00, yielding a compensation rate of $335.33. G.S. § 97-2(5).
2. On 8 February 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6). The aggravation of plaintiff's anterior cruciate ligament condition, leading to his deceleration problem, is causally related to his 8 February 1994 injury by accident. Id. The subsequent injury involving a tear to plaintiff's right lateral meniscus is causally related to his 8 February 1994 injury by accident and the anterior cruciate ligament injury. Id.
3. As the result of his 8 February 1994 injury by accident and related injuries and surgical procedures, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $335.33 per week for the following periods: from 2 March 1994 to 4 April 1994; from 7 June 1994 to 14 August 1994; and from of 9 October 1994 to 19 November 1994. G.S. § 97-29.
4. As the result of his 8 February 1994 injury by accident and related injuries and surgical procedures, plaintiff is entitled to be paid by defendants permanent partial disability compensation at the rate of $335.33 per week for a period of twenty weeks for the ten percent (10%) rating to his right knee. G.S. § 97-31(15).
5. As the result of his 8 February 1994 injury by accident and related injuries and surgical procedures, plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred. G.S. § 97-25.
*************
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay temporary total compensation to plaintiff at the rate of $335.33 per week, for the following periods: from 2 March 1994 to 4 April 1994; from of 7 June 1994 to 14 August 1994, and; from 9 October 1994 to 19 November 1994. This compensation has accrued and shall be paid to plaintiff in a lump sum, subject to a reasonable attorney's fee approved herein.
2. Defendants shall permanent partial disability compensation to plaintiff at the rate of $335.33 per week for a period of twenty weeks for the 10% permanent partial disability of his knee. This compensation has accrued and shall be paid to plaintiff in a lump sum, subject to a reasonable attorney's fee approved herein.
3. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his 8 February 1994 injury by accident and related injuries and surgical procedures.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff is approved for counsel for plaintiff. This fee shall be deducted from the sums due plaintiff and paid directly to counsel for plaintiff.
5. Defendants shall pay the costs.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
S/ ______________ DIANNE C. SELLERS COMMISSIONER